Matter of Smallman (2024 NY Slip Op 05561)

Matter of Smallman

2024 NY Slip Op 05561

Decided on November 13, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 13, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
WILLIAM G. FORD, JJ.

2021-03335

[*1]In the Matter of Philip J. Smallman, admitted as Philip Joseph Smallman, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Philip J. Smallman, respondent. (Attorney Registration No. 1949197)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 12, 1984, under the name Philip Joseph Smallman.

Courtny Osterling, White Plains, NY, for petitioner.
Scalise & Hamilton, P.C., Scarsdale, NY, (Deborah A. Scalise of counsel), for respondent.

PER CURIAM

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District commenced a formal disciplinary proceeding against the respondent by serving and filing a notice of petition dated July 15, 2021, and a verified petition dated May 24, 2021. The respondent, through counsel, served and filed a verified answer dated August 10, 2021, largely admitting to the factual specifications contained in the petition, denying the conclusion of law as to charge one in the petition, and conceding charge two. The Grievance Committee filed a statement of disputed and undisputed facts dated October 15, 2021, which was not challenged by the respondent. By decision and order on application dated February 17, 2022, this Court referred the matter to Norma Giffords, as Special Referee, to hear and report. A prehearing conference was conducted on July 13, 2022. A disciplinary hearing was held on four separate dates: September 9, 2022, December 20, 2022, January 30, 2023, and April 11, 2023. By report dated July 5, 2023, the Special Referee sustained both charges in the petition.
The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent cross-moves to disaffirm so much of the Special Referee's report as sustained charge one and requests that the Court deny the Grievance Committee's motion to confirm the Special Referee's findings as to charge one; concedes the Special Referee's findings that charge two be affirmed; and requests that this Court impose discipline in the form of an admonition or private reprimand, but no greater than a public censure if both charges are sustained. In view of the evidence adduced at the hearing, we find that the Special Referee properly sustained both charges in the petition and both [*2]charges are sustained.
The Petition 
Charge one alleges that the respondent employed coercion, intimidation, or undue influence in entering into sexual relations incident to his professional representation of a client, CL, in violation of rule 1.8(j)(1)(ii) of the Rules of Professional Conduct (22 NYCRR 1200.0). In March 2017, the respondent was appointed to represent CL following her indictment on charges of murder in the second degree. In March 2017, CL pleaded not guilty to the murder charge and, pending trial, she was remanded to the custody of the New York City Department of Correction and housed at Rikers Island. Thereafter, representatives of the Women's Prison Association met with CL and prepared a background narrative of her, which was provided to the respondent. This narrative revealed that CL was a survivor of childhood and adult sexual trafficking and was certified by New York State as a trafficking survivor. Upon receiving this information, the respondent filed a motion seeking CL's release from custody, which was granted upon the condition that CL live with her mother upon her release. CL agreed to the condition and was released from custody on April 3, 2020.
Subsequent to CL's release from custody, the respondent learned that CL was not living with her mother, in violation of CL's conditional release. The respondent telephoned CL and sent her text messages. In an exchange of text messages in September 2020, CL sent the respondent pictures of herself in which she was partially clothed. The respondent replied via text that additional pictures should be sent. CL complied with the respondent's request, to which the respondent replied that he was physically aroused. The respondent and CL agreed to meet at the respondent's office on September 21, 2020. At this meeting, they discussed the respondent's filing of a civil suit on CL's behalf and the terms of a written retainer agreement related to the civil suit. Also at this meeting, CL performed an act of fellatio on the respondent.
Charge two alleges that by the aforementioned facts, the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing 
At the hearing, the respondent testified that the Honorable Vincent Del Giudice of the Supreme Court, Kings County, assigned the respondent as counsel on CL's criminal matter, wherein she was indicted on the top count of murder in the second degree and remanded to Rikers Island. The respondent stated that it was a complicated case for which he retained an investigator, and the court appointed a psychiatrist to evaluate CL. Regarding the findings, the respondent stated, "To my knowledge, [CL] had a long and troubled history going back to her grammar school years, a dysfunctional family, if you will. I believe her mother was involved in the sex trade as well, and I guess the simple way to say it is she probably just acted out in a number of ways from a very early childhood, which resulted in conflict with various governmental agencies; resulted in placement in group homes, which obviously, is not a very good setting." The respondent stated that CL's designation as a trafficking survivor was a result of her prior exposure of being placed in a home, where abuse was alleged to have taken place, and formed the basis for CL to file a civil lawsuit. Based on CL's status as a survivor of human trafficking, and due to the COVID-19 pandemic, the respondent made an application that CL be released from Rikers Island pending trial. CL was released from custody with the condition that she remain with her children at her mother's home. The respondent learned from CL's mother that CL was not abiding by the terms of her conditional release, and he contacted CL via phone. Thereafter, the respondent and CL exchanged multiple text messages, which the respondent characterized as becoming "completely inappropriate." The respondent received text messages from CL with photographs in which she was partially clothed, and the respondent requested that CL send additional photographs. The respondent and CL continued their text message exchange in a sexual nature, and discussed CL's criminal matter while having referenced the terms of her pretrial conditional release. The respondent and CL agreed to meet at the respondent's office in Brooklyn. The respondent testified that there "was some back and forth about picking a date and a time, and I did write, 'It's a date.' She wrote, 'Then see you Monday, Mr. Smallman,'" to which the respondent replied, "'Aw, I'm blushing.' She wrote, 'Yes. Me too.' I wrote, 'Maybe more,' and she wrote, 'Like,' with four question marks."
The respondent testified that their in-person meeting at his Brooklyn office lasted approximately 10 to 15 minutes, during which the respondent informed CL of an attorney who would handle her civil suit, and reminded her of the terms of her conditional release. The respondent stated [*3]that at the conclusion of the meeting, he got up to leave, CL approached him and got close to him, and extended her hand towards the respondent's crotch. The respondent testified that he "let the situation continue to unfold, and she performed oral sex." The respondent stated he did not request that CL do anything, that there was no dialogue that he could recall, and that he did not tell CL to stop. However, the respondent did recall that he loosened his belt. On cross-examination, the respondent was asked about the version of events in a report from the respondent's psychiatrist, Paul Schienberg, which stated, "At some point, [the respondent] asked [CL] to meet him at his office for the purpose of discussing her cases. At the time, he rented an office in a dentist's suite. She met him there as he had requested. When she arrived at the office, he requested that she perform fellatio and he touched her breasts" (emphasis added). When questioned regarding the inconsistency between Schienberg's report and the respondent's testimony, the respondent stated that he recalled having telephone interviews over several sessions with Schienberg, but that he did not agree with or adopt several findings in Schienberg's report, which the respondent thought were "inaccurate." The respondent testified that the interactions with CL were consensual, he expressed remorse for his misconduct, and stated that the conduct was aberrational.
The text messages between the respondent and CL show that the sexual text messages began on Friday, September 11, 2020, when CL sent the respondent a picture of herself partially clothed. The next day, the respondent initiated the sexual text messaging, including telling CL that it was "[h]ard to show you what needs to be done," and that it was "[m]uch easier to go over in person." The respondent and CL then agreed to meet on Monday, September 21, 2020, which is when the physical sexual contact occurred.
The respondent denied demanding sexual relations from CL, nor did he employ coercion, intimidation, or undue influence in entering into sexual relations with CL. The respondent withdrew his representation of CL only after a complaint was filed against him. He also withdrew from the Assigned Counsel Plan panel for the City of New York.
The respondent testified in mitigation regarding his struggles with alcohol addiction, health issues, and family issues. The respondent further testified regarding remedial measures he has taken, including that he no longer represents female clients, that he attends weekly therapy sessions, that he has returned to Alcoholics Anonymous, that he participates in the Lawyers Assistance Program, that he is preparing for retirement, and that he has been supporting his family members through medical issues that they were experiencing. Further in mitigation, the respondent testified that he engaged in pro bono work throughout his career, most notably, he worked on two exoneration matters that resulted in those clients being released from prison. The respondent further testified that he, along with a professor from Brooklyn Law School, "started" the original Innocence Project at Brooklyn Law School, which "started a bunch of others," but he did not provide any additional evidence to support that claim.
The Special Referee's Report 
In sustaining both charges, the Special Referee found that:
"Although respondent rationalized his behavior by repeatedly avowing that the act was consensual (with the implication that after all, CL is now an adult engaging in sexual trade), CL remains a survivor of childhood trafficking. That fact is appalling. By engaging in a sexual encounter with CL, in my admittedly lay opinion, he compounded the abuse which had been part of CL's life: Instead of allowing her to view someone who should have been supportive of her legal needs and treating her like a human being with a troubled background, his behavior emphasized that sex was her only value. While she had attained her majority at the time he interacted with her, nevertheless, she remains a survivor of child sexual trafficking. Instead of treating her with respect and understanding that CL's background was at least as troubled as his own and led her to life as a sex worker, his actions confirmed that her value lay in what she could do sexually for him; he fed into the low self-esteem experienced by many survivors of child sexual trafficking.
"In their relationship, the respondent was powerful. He got her out of jail, was helping her obtain money if the civil action was [*4]successfully resolved and might keep her out of prison for breaching the Court's order which had allowed her to be released from Rikers if she stayed with her mother. CL had only one way to encourage Respondent to continue to zealously represent her, and she used her ability gained as a sex worker to pay."
The Grievance Committee moves to confirm the report of the Special Referee, which sustained both charges against the respondent.
The respondent cross-moves to disaffirm so much of the Special Referee's report as sustained charge one and requests that this Court deny the Grievance Committee's motion to confirm the Special Referee's findings as to charge one; concedes the Special Referee's findings that charge two should be affirmed; and requests that this Court impose discipline in the form of an admonition or private reprimand, but no greater than a public censure if both charges are sustained.
Findings and Conclusion 
In view of the evidence adduced at the hearing and the respondent's own admissions, we find that the Special Referee properly sustained both charges in the petition and those charges are sustained. Despite the respondent claiming that this was a one-time incident, he exchanged multiple sexual text messages with CL over several days and escalated the sexual interaction from text messaging to physical contact in his office. The conversations between the respondent and CL were interlaced with questions regarding her pretrial release, her potential civil suit, as well as text messages that were sexual in nature. CL's vulnerable status as a survivor of childhood and adult sex trafficking was known to the respondent and was a factor that he presented in his legal arguments to secure her conditional pretrial release.
Rule 1.8(j)(1)(ii) of the Rules of Professional Conduct prohibits a lawyer from employing coercion, intimidation or undue influence in entering into sexual relations incident to any professional representation of the lawyer. Comment 17 to rule 1.8 (NY St Bar Assn rev Oct. 2021) recognizes that:
"The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is often unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage."
We find that CL's status as a victim of childhood and adult sex trafficking made her a vulnerable client. She was facing homicide charges at the time the respondent represented her, and when the respondent contacted CL, he knew that she was violating her terms of her pretrial release. In her report, the Special Referee noted that the respondent was in a position of power, that he had helped obtain CL's release from jail, that he was aiding her in obtaining an attorney for her civil action, and that he could help prevent CL from being returned to custody for breaching the terms of her pretrial release. These circumstances were compounded by the potential prison sentence that CL faced if convicted of the top count of the indictment. Consequently, by engaging in sexual text messaging and relations with CL, under the circumstances as occurred here, the respondent violated rules 1.8(j)(1)(ii) and 8.4(h) of the Rules of Professional Conduct.
In determining an appropriate measure of discipline, this Court considered, inter alia, the challenging life circumstances described by the respondent, the remedial measures implemented, and his pro bono work. We have considered also in mitigation the substantial character evidence presented.
Under the totality of the circumstances, including the vulnerability of CL and the opportunities the respondent had to end the inappropriate communication rather than escalate it to physical contact, we find that the respondent's conduct warrants his suspension from the practice of law for a period of five years.
LASALLE, P.J., DILLON, DUFFY, BARROS and FORD, JJ., concur
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted, and the respondent's cross-motion is denied; and it is further,
ORDERED that the respondent, Philip J. Smallman, admitted as Philip Joseph Smallman, is suspended from the practice of law for a period of five years, commencing December 13, 2024, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than June 13, 2029. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Philip J. Smallman, admitted as Philip Joseph Smallman, shall comply with this Court's rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Philip J. Smallman, admitted as Philip Joseph Smallman, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Philip J. Smallman, admitted as Philip Joseph Smallman, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court